Charlotte L. Andrews, et al. [1] v. Commissioner. Andrews v. Commissioner
Docket Nos. 97628, 97629, 67630, 97631, 99353.
United States Tax Court
1944 Tax Ct. Memo LEXIS 220; 3 T.C.M. (CCH) 526; T.C.M. (RIA) 44192; June 3, 1944
*220 Alexander S. Andrews, Esq., 32 Liberty St., New York, N.Y., for the petitioners. James C. Maddox, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in the income tax of the petitioner in each of these proceedings for the calendar year 1936, in the following amounts: Charlotte L. Andrews
No. 97628
$ 3,197.83
Bertha A. Rainey
97629
3,330.15
Mary A. Stoddard
97630
1,615.56
Belle Andrews
97631
3,196.71
Antoinette D. Andrews
99353
72,964.56
In our earlier decision, reported at , we found that certain scrip received by petitioners in 1936 had fair market value of 35 cents for each dollar of its face value. The Circuit Court of Appeals in , reversed our decision upon that issue and remanded the cases to us solely for a revised determination of the value of the scrip. Findings of Fact We incorporate herein by reference our findings of evidentiary facts heretofore made and reported at . Enough of these evidentiary facts already found by us *221 are necessary for the orderly presentation of the issue before us, together with new facts developed at the rehearing herein, are as follows: The petitioners kept their books and filed their income tax returns for the year 1936 on the cash basis. They filed their returns for the year 1936 in the office of the collector of internal revenue for the first district of New York. Four of the petitioners are sisters, the fifth, Antoinette D. Andrews, being a sister-in-law. Throughout 1936 they were owners of Associated Gas & Electric Co. "6% Convertible Obligations" due March 1, 2002, in the following face amounts: Antoinette D. Andrews
$1,236,600
Bertha A. Rainey
120,000
Mary A. Stoddard
66,000
Belle Andrews
100,200
Charlotte L. Andrews
120,000
On September 22, October 20, and November 6, 1936, the Associated Gas & Electric Co., hereinafter called the company, by resolution issued to holders of its 6 percent convertible obligations due in the year 2002, including petitioners, scrip as follows: Scrip Issued
Oct. 1936
Nov. 1936
Dec. 1936
Total
$1,482.542
$4,475,761
$4,481,458
$10,439.761
Total issued to: C. L. Andrews
3,600
10,800
10,800
25,200
B. A. Rainey
3,600
10,800
10,800
25,200
M. A. Stoddard
1,980
5,940
5,940
13,860
B. Andrews
3,006
9,018
9,018
21,042
A. D. Andrews
37,098
111,294
111,294
259,686
Total
49,284
147,852
147,852
344,988
*222 The scrip, which was issued in payment of interest on the 6 percent convertible obligations, is identical except that the certificates bear different dates of issue, as above indicated, and the maturity dates are, respectively, October, November, and December 1941, the October scrip purporting to repressent interest from June 1, 1933, through November 30, 1933; the November scrip purporting to represent interest from December 1, 1933, through May 31, 1935; and the December scrip purporting to represent interest from June 1, 1935, through November 30, 1936. The scrip in question bore interest, payable semi-annually, at the rate of 4 percent per annum, whenever the board of directors should declare available net income for the purpose and was to be cumulative. Its principal and accumulated interest were subordinated in payment to senior securities of the company. The 6 percent convertible obligations by their terms contemplated the payment of interest in securities of the Associated Gas & Electric Co. and provided expressly that all interest paid in securities should be deemed paid to the extent of the amount or value of such securities as determined by the board of directors. The *223 scrip was issued by the Associated Gas & Electric Co. in payment of interest obligations. The 6 percent convertible obligations provided that unpaid interest thereon should accumulate without interest. The full amount of the "Senior Indebtedness" referred to in the scrip certificate of the Associated Gas & Electric Co., though very large, could not be accurately determined in 1936 as of that date, nor could estimates be fairly made as to what that indebtedness would be in 1941, the year in which the scrip certificates became due, because of the contingent nature of certain of the liabilities of the company. The Company was in serious financial difficulties in 1936, an involuntary petition for bankruptcy having been filed against it for reorganization under section 77B of the Bankruptcy Act, and jeopardy assessments and liens involving asserted income tax liability in the amount of approximately $50,000,000 having been also filed against it. Its books and those of its subsidiaries showed an operating deficit in 1934, and a profit in 1935 and 1936. The scrip certificates were never traded in or quoted on any exchange, but all transactions therein were over the counter. Virtually all *224 of the known transactions were handled by three New York brokerage firms: G. A. Saxton & Co., Inc.; S. A. O'Brien & Co.; and Howard & Robbins. The face value of the scrip outstanding in October 1936, was $1,482,542; in November, $5,958,303; and in December, $10,439,761. From October 12, 1936, to December 31, 1936, S. A. O'Brien made purchases of such scrip in the face amount of $386,066.61, * at prices ranging from 40 to 52 percent of face value, the average being 42.40 percent. Of this amount approximately $280,550 was sold to companies affiliated with Associated Gas & Electric Co. During 1937 the same firm purchased $803,110 at prices ranging from 21 percent to 50 percent of face value. Of this amount, $173,296 was sold to companies connected with Associated Gas and $629,814 to others. During 1938 this firm bought scrip of a total face value of $227,463.80 prices ranging from 18 percent to 35 percent of face value. Of this amount, $30,442.39 was sold to companies connected with the Associated Gas & Electric Co. system, and $197,021.41 to others. *225 All of the purchases made by companies connected with Associated Gas & Electric Co. were made through or from the O'Brien firm. During the last three months of 1936, G. A. Saxton & Co., Inc., purchased a total face amount of such scrip of $39,577 at prices ranging from 38 percent to 52 percent of its face value. During 1937 G. A. Saxton & Co. purchased scrip of a total face value of $155,281.35 at prices ranging from 22 percent to 50 percent of its face value. During 1938 G. A. Saxton & Co. bought $125,949.15 face amount of the scrip at prices ranging from 18 percent to 35 1/2 percent of its face value. It was stipulated that the third principal dealer in the scrip, Howard & Robbins, dealt in the scrip during the last three months of 1936 to approximately the same extent as did G. A. Saxton & Co. No statistics are available to us with reference to this firm's activities during 1937 and 1938. In the case of each dealer, a portion of the scrip was purchased by it as broker, and the remaining amount was purchased on its own account, as principal, for resale or investment. The market for this scrip was limited and was supported to the extent indicated above by the purchases of *226 companies connected with the issuing company. The transactions on the market, however, with regard to this scrip were real and not fictitious and the market was free and open. If petitioners had placed all of their scrip upon the market for immediate sale it would have resulted in a substantial reduction of the price at which it could have been sold from the then existing market price. If, however, it had been marketed intelligently over a reasonable time, it could have been sold at not less than 20 cents per every dollar of face value. The fair market value of the scrip when received by petitioner was 20 cents for every dollar of face value. Opinion KERN, Judge: The Circuit Court of Appeals has remanded these cases to us for a revised determination of the value of scrip which was received by petitioners during the tax year in payment of interest on certain 6 percent convertible obligations of AssociatedcGas & Electric Co., owned by them. The Circuit Court, in its opinion, indicated its view that the petitioner had successfully rebutted the presumption of correctness which had supported the respondent's determination of the value of the scrip involved herein. At the rehearing, *227 the respondent offered three exhibits, consisting of certain records of purchases, sales and trading in the scrip by the firm of S. A. O'Brien & Co. Petitioners offered both oral and documentary evidence. We have, in our reexamination of these cases, in accordance with the directions of the Circuit Court of Appeals, considered them on the evidence alone, without the aid of any presumption. From the facts now in evidence, we are able to determine to what extent the scrip was traded in for the period of more than two years after its receipt by petitioners, and to what extent the market therefor was supported by "insiders." The evidence shows that during the 27 months after its issuance, this scrip was purchased by and through two of the three principal dealers therein in the face amount of $1,737,448.72, or about five times the quantity owned by all these petitioners. The prices at which it was bought ranged from a low of 18 percent of its face value to a high of 52 percent. Of the total amount handled by the principal dealer, S. A. O'Brien & Co., during that period of approximately $1,385,467, about $484,283 was sold to companies connected with Associated Gas & Electric Co. During *228 the last three months of 1936, such connected companies bought more than 75 percent of the entire amount handled by S. A. O'Brien & Co.; during 1937, more than 21 percent; and during 1938, more than 13 percent. The scrip sold by the other firms was sold to others than companies connected with Associated Gas & Electric Co. While the witnesses agreed the market was limited, they insisted it was not a "rigged" market in the sense that it was a fictitious market, and they were unwilling to say it could not have absorbed petitioner's'scrip within a period of two years although at a considerably lower price than the prevailing market price for the quantities then on the market. Although the market was limited, it is an inescapable fact that there was a market for the scrip in which willing sellers and willing buyers met and agreed upon the price at which the scrip was bought and sold. Ordinarily, actual sales are the best evidence of fair market value. . The Circuit Court, in its opinion in this case stated that it could not disregard the existence of this market, but that there was no evidence in the record to show whether *229 there were sales of this scrip in the market for a period of two years, to show what the prices were during the second year, and to show to what extent the prices were sustained. This evidence, as we have indicated, is now before us. Having given careful consideration to the market price at which the scrip in question was bought and sold during the 27 months after its issuance, as well as a consideration to the extent to which the market prices were supported by the officers and affiliates of the issuing company, and the difficulties incident to the orderly disposal of the large blocks of this scrip owned by petitioners, we have arrived at the fair market value for the scrip indicated in our findings. In so doing we have considered the opinion of the Circuit Court heretofore rendered in this proceeding as the law of the case and have made a conscientious effort to comply with its mandate, regardless of how difficult that might be. Cf. Dissenting opinion of Judge L. Hand in [43-1 USTC [*] 9362]. Decision will be entered under Rule 50. Footnotes
1. Bertha A. Rainey, Mary A. Stoddard, Belle Andrews, Antoinette D. Andrews.↩
*. There is an unexplained discrepancy between this figure and the figure of $356,024.76 appearing in an exhibit attached to a stipulation filed at the original hearing herein.↩